UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**DAMON SMITH #117023**                                    **CIVIL ACTION**

**versus**                                                 **NO. 09-3791**

**TERRY TERRELL, WARDEN**                                  **SECTION: "A" (1)**

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Damon Smith, is a state prisoner incarcerated at the Allen Correctional Center, Kinder, Louisiana. On November 13, 2003, he was convicted of one count of distribution of cocaine and one count of distribution of marijuana.[1] On May 18, 2005, he was sentenced on each

---

[1] State Rec., Vol. II of III, transcript of November 13, 2003, p. 69; State Rec., Vol. I of III, minute entry dated November 13, 2003; State Rec., Vol. I of III, Order dated November 14, 2003.

count to a concurrent term of twenty-five years imprisonment.[2] The Louisiana Fifth Circuit Court of Appeal then affirmed his convictions on June 28, 2006,[3] and the Louisiana Supreme Court denied his related writ application on September 28, 2007.[4]

On January 3, 2008, petitioner filed with the state district court an application for post-conviction relief.[5] That application was denied on February 26, 2008.[6] His related writ applications were then denied by the Louisiana Fifth Circuit Court of Appeal on June 2, 2008,[7] and the Louisiana Supreme Court on January 30, 2009,[8] and April 13, 2009.[9]

On April 29, 2009, petitioner filed the instant federal application for *habeas corpus* relief.[10] In support of his application, he claims that his counsel was ineffective and that the trial

---

[2] State Rec., Vol. II of III, transcript of May 18, 2005; State Rec., Vol. I of III, minute entry dated May 18, 2005.

[3] State v. Smith, 934 So.2d 269 (La. App. 5th Cir. June 28, 2006) (No. 05-KA-951); State Rec., Vol. II of III.

[4] State *ex rel.* Smith v. State, 964 So.2d 357 (La. 2007) (No. 2006-KH-2930); State Rec., Vol. II of III.

[5] State Rec., Vol. II of III.

[6] State Rec., Vol. II of III, Judgment dated February 26, 2008.

[7] Smith v. Terrell, No. 08-KH-267 (La. App. 5th Cir. June 2, 2008) (unpublished); State Rec., Vol. II of III.

[8] State *ex rel.* Smith v. State, 999 So.2d 751 (La.), reconsideration denied, 6 So.3d 760 (La. 2009) (No. 2008-KH-2057); State Rec., Vol. II of III.

[9] State *ex rel.* Smith v. State, 5 So.3d 158 (La. 2009) (No. 2008-KH-1532); State Rec., Vol. II of III.

[10] Rec. Doc. 1.

judge was biased. The state concedes that the application is timely and that petitioner exhausted his state court remedies.[11]

## Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we

---

[11] Rec. Doc. 12, Answer, ¶ 9, p. 2.

stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

## Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts of this case as follows:

> Detective Kevin Kately of the Iberia Parish Sheriff's Office testified that on June 26, 2002, he assisted the St. John the Baptist Parish Sheriff's Office in an undercover drug operation. He was assigned to go to Thirteenth Street in Reserve to attempt drug purchases.
> Detective Kately testified that while driving down Thirteenth Street, he encountered a black male, who he later learned was defendant, Damon Smith. The officer explained that he stopped to ask defendant where he could obtain narcotics. Detective Kately testified that he allowed defendant to get into his vehicle so that defendant could direct him to a location where there were drugs. Detective Kately testified that he continued to drive along Thirteenth Street, and defendant told him to stop as they approached a man, later identified as Michael Lee. According to Detective Kately, defendant spoke to Lee as if he knew him.
> Detective Kately testified that they asked Lee for narcotics. Lee gave Detective Kately crack cocaine in exchange for thirty dollars. Detective Kately also paid Lee ten dollars for some marijuana. Detective Kately testified that defendant asked Lee to give him marijuana, and Lee complied and that defendant did not pay Lee for his marijuana.
> Detective Kately explained that upon completing the buy, he placed the suspected crack cocaine into an evidence envelope (State's

Exhibit 1) and sealed it. He wrote his initials on the envelope and marked it as buy number two, as it was part of the second transaction he took part in that day. Detective Kately packaged the suspected marijuana (State's Exhibit 2) in the same manner. The marijuana Lee gave to defendant was not seized.

      Detective Samantha Wilson of the St. John the Baptist Parish Sheriff's Office testified that she supervised the undercover operation on June 26, 2002. As part of the "cover team," she monitored the drug transactions from a remote location. Detective Wilson testified that she met Detective Kately after the purchase in a prearranged location and he gave her the substances he had purchased. Detective Wilson testified that she field tested the evidence, and it was positive for cocaine and marijuana. She then packaged the envelopes in an evidence bag. The evidence was later transported to the Louisiana State Police Crime Lab where further testing confirmed the results of the field tests.

      Detective Troy Hidalgo, a narcotics officer with the St. John the Baptist Parish Sheriff's Office, testified that he installed hidden audio and video devices in the car used by Detective Kately during the undercover operation. The June 26, 2002 transaction was recorded, and the tape was introduced at trial and shown to the jury.

      Michael Lee testified for the defense at trial. He stated that he pled guilty to narcotics distribution in connection with the June 26, 2002 incident. Lee admitted knowing the defendant, explaining that defendant had been his barber since childhood. Lee stated that when he sold cocaine and marijuana to the undercover agent on June 26, 2002, he saw defendant in the agent's vehicle. Lee testified that he did not agree to give defendant anything in exchange for bringing him people who wanted to buy drugs. He testified that after he completed his transaction with the officer, he offered defendant some marijuana. Lee explained that defendant took the marijuana, and paid him for it later that day.[12]

Summary Dismissal of the State Post-Conviction Application

As a preliminary matter, the Court notes that petitioner complains that his state post-conviction application was summarily dismissed without requiring an answer from the District

---

[12] State v. Smith, 934 So.2d 269, 272-73 (La. App. 5th Cir. June 28, 2006) (No. 05-KA-951); State Rec., Vol. II of III.

- 5 -

Attorney or a hearing. However, Louisiana law expressly allows for such summary dismissals. See, e.g., La.C.Cr.P. art. 929 ("The application may be dismissed without an answer if the application fails to allege a claim which, if established, would entitle the petitioner to relief."). Further, even if petitioner is contending that the state courts misapplied state law in summarily dismissing his application, that claim fails for two reasons. First, federal *habeas corpus* relief may be granted only to remedy violations of the *federal* Constitution and laws of the United States; mere violations of *state* law will not suffice. 28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983). Second, in any event, claims concerning alleged errors in state post-conviction proceedings are not cognizable in federal *habeas corpus* proceedings. Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir. 1995); see also Morris v. Cain, 186 F.3d 581, 585 n.6 (5th Cir. 1999); Baham v. Allen Correctional Center, Civ. Action No. 07-4075, 2009 WL 3148757, at *3 (E.D. La. Sept. 30, 2009); Turner v. Carlton, No. 2:05-CV-102, 2008 WL 2169519, at *2 (E.D. Tenn. May 22, 2008); Campbell v. Cain, Civ. Action No. 06-3983, 2007 WL 2363149, at *2 n.23 (E.D. La. Aug. 15, 2007).

Ineffective Assistance of Counsel

Petitioner claims that his trial counsel was ineffective. In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. Id. at 697. Petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds

that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the

relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

In the instant case, the state district court denied petitioner's ineffective assistance of counsel claim, finding that he had failed to make the showings required under Strickland.[13] Relief was then likewise denied by the Louisiana Fifth Circuit Court of Appeal[14] and the Louisiana Supreme Court.[15] Because a claim of ineffective assistance of counsel is a mixed question of law and fact, this Court must defer to those state court decisions rejecting petitioner's ineffective assistance claim unless the decisions were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Here, it is evident that the state courts correctly identified the governing legal standard for ineffective assistance claims, i.e. the Strickland standard. Therefore, this Court need only determine whether the state courts unreasonably applied Strickland. As noted below, it is apparent that the state courts applied Strickland in a reasonable manner.

---

[13] State Rec., Vol. II of III, Judgment dated February 26, 2008.

[14] Smith v. Terrell, No. 08-KH-267 (La. App. 5th Cir. June 2, 2008) (unpublished); State Rec., Vol. II of III.

[15] State ex rel. Smith v. State, 5 So.3d 158 (La. 2009) (No. 2008-KH-1532); State ex rel. Smith v. State, 999 So.2d 751 (La. 2009), reconsideration denied, 6 So.3d 760 (La. 2009) (No. 2008-KH-2057); State Rec., Vol. II of III.

In his federal application, petitioner primarily contends that his counsel was ineffective in failing to argue that the "rule of lenity" should be applied in his case. For the following reasons, it is clear that contention has no merit.

Courts employ the rule of lenity as a matter of constitutional due process to ensure that "that no individual be forced to speculate, at peril of indictment, whether his conduct is prohibited." See United States v. Rivera, 265 F.3d 310, 312 (5th Cir. 2001) (quotation marks omitted). "[T]he rule of lenity is a principle of statutory construction which applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose." Albernaz v. United States, 450 U.S. 333, 342 (1981). Accordingly, the rule is invoked when there is some doubt as to whether a legislature in fact meant to criminalize certain conduct or when is it unclear as to what penalty the legislature intended. However, in either event, the rule of lenity is applicable *only* where there actually exists a statutory ambiguity, and the rule "is not to be used to beget one." Id.

In this case, there is no statutory ambiguity. Although petitioner's argument is nebulous, he appears to be arguing that it is unclear whether the Louisiana Legislature intended for the law of principals and the laws proscribing drug distribution to criminalize the conduct at issue here, i.e. where a defendant has merely facilitated distribution by another without himself actually distributing the drug. However, Louisiana courts have found, and this Court agrees, that Louisiana law unambiguously provides that such facilitation is itself sufficient to convict a defendant as a principal to a drug distribution charge and that the rule of lenity does not mandate a different result. See, e.g., State v. Brown, 904 So.2d 805 (La. App. 5th Cir. 2005) ("As a general rule, the law of

principals applies to all crimes including those for the offense of narcotics distribution, defined as the 'delivery' or transfer of possession and control over controlled substances. In Louisiana, an intermediary who arranges or facilitates the transfer of narcotics from the seller to the buyer may, therefore, be charged and punished as a principal in the act of distribution." (citations omitted)), writ denied, State ex rel. Brown v. State, 948 So.2d 159 (La. 2007).[16] Further, this is not a case which

---

[16] To the extent that petitioner is perhaps suggesting that he did not even facilitate the distribution in this case, that claim is not properly before the Court because petitioner did not assert in his federal application a claim challenging the sufficiency of the evidence. Moreover, even if such a claim had been asserted, it clearly would have no merit for the reasons noted by the Louisiana Fifth Circuit Court of Appeal on direct appeal. As that court noted, "[a] defendant may be found guilty of distribution as a principal to the offense if he aids and abets in the distribution or if he directly or indirectly counsels or procures another to distribute a controlled dangerous substance." Smith, 934 So.2d at 274 (quotation marks omitted); State Rec., Vol. II of III. The court then correctly recounted the evidence and found that it was sufficient to support petitioner's convictions:

> At trial in the instant case, the evidence showed that it was Michael Lee, not defendant, who actually gave the narcotics to Detective Kately, and who received the money from the officer. The State sought to prove that defendant was a principal to the narcotics distribution in that he directed the officer to Lee and accepted payment from Lee in the form of marijuana. Defendant argues that the State's assertion was refuted by Lee's own testimony.
> Kately testified that he stopped and asked defendant where he could get some narcotics. Kately explained that upon defendant's suggestion, he allowed defendant to ride along with him so that defendant could direct him to the area where the narcotics were located. Kately testified that he drove under defendant's direction until they came upon Lee and defendant told him to stop the vehicle.
> Kately testified that defendant seemed to know Lee and called him by a nickname. When Kately completed his transaction with Lee, defendant asked Lee for some marijuana. According to Kately, defendant told Lee, "Come on, Moody. I took care of you." Kately said that Lee gave defendant some marijuana, and that defendant did not give Lee any money in return.
> Michael Lee testified that he saw defendant in the car with Kately when he sold the officer marijuana and cocaine. Lee denied having an arrangement with defendant to give him anything in exchange for bringing him people who wanted to buy drugs. Lee testified that after he sold narcotics to the undercover officer, defendant accepted his offer of marijuana and defendant paid him for the marijuana

involves a statute providing for ambiguous or inconsistent penalties. Because there is no ambiguity in either the statutory prohibition or penalty, the rule of lenity simply has no application in this case, and counsel was therefore not ineffective in failing to raise it.

Petitioner also suggests in passing and with little explanation that his counsel was ineffective in various other respects. To the extent that he meant those brief references as distinct claims, they also have no merit for the following reasons.

First, petitioner contends that counsel performed an inadequate investigation. A petitioner asserting such a claim bears the burden to provide factual support as to what further investigation would have revealed. See Moawad v. Johnson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008). In the instant case, petitioner has brought forth *no* evidence to show that further investigation would have revealed any information whatsoever which would have been beneficial to the defense. Without such evidence, he cannot make the required showing that he was prejudiced by the allegedly inadequate investigation.

---

later that day.
    The videotape was played three times for the jury in the course of the trial. The jury could reasonably have inferred from the videotape and from Kately's testimony that defendant had arranged with Lee to assist him in selling narcotics by taking potential buyers to him. While Lee's testimony, if believed, presents a possible hypothesis of innocence, the jury obviously found Kately's testimony and the videotape to be more credible. This Court cannot assess a witness' credibility or reweigh evidence on appeal. State v. Benoit, 04-436, p. 10 (La.App. 5 Cir. 9/28/04), 885 So.2d 625, 631.
    Accordingly we find that the evidence presented at trial was sufficient under the Jackson criteria to support defendant's conviction.

Id. at 274-75.

Second, petitioner contends that his counsel was ineffective for failing to call witnesses. The United States Fifth Circuit Court of Appeals has noted that "complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative." Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002). Therefore, to show the prejudice required to support an ineffective assistance claim premised on the failure to call a witness, a petitioner "'must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial.'" Id. (quoting Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985)); see also Bray v. Quarterman, 265 Fed. App'x 296, 298 (5th Cir. 2008) ("To prevail on such a claim, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."). Because petitioner has not provided any evidence whatsoever, such as affidavits from the proposed witnesses, showing that the witnesses would have testified at trial and that their testimony would have been favorable to the defense, this claim necessarily fails.

Third, petitioner contends that his counsel was ineffective for "den[ying] his client a right to have other options considered by the jury as to responsive verdicts and waived the responsive verdicts to only guilty and not guilty."[17] For the following reasons, this contention is clearly meritless.

---

[17] Rec. Doc. 1, supporting memorandum, p. 14.

- 12 -

As a preliminary matter, the Court notes that the decision to omit the additional responsive verdicts was a decision reached with petitioner's consent. The transcript reflects the following exchange:

> THE COURT:
> ....
> During our break we have had several charge conferences and because of the nature of the charge Mr. Brazan's client will agree to the stereamline version of the responsive verdict form. And in that regard Mr. Brazan's client will make his wishes known on the record.
>
> MR. BRAZAN:
> Yes, Your Honor. After discussing the matter with my client, we determined that some responsive verdicts don't make any sense and were not in his best interest. And pursuant to that, Mr. Smith has agreed with me that we will ask that the other responsive verdicts will be stricken from the sheet of the possible verdicts and there will only be a guilty as charged or not guilty. Is that correct, Mr. Smith?
>
> DAMON SMITH:
> Yes, sir.
>
> MR. BRAZEN:
> Thank you, Your Honor.
>
> THE COURT:
> Let the record reflect that the defendant himself has made this election and we will go forward with having the only possible verdicts being guilty of the offense charged and not guilty.[18]

Moreover, in any event, the decision to omit responsive verdicts is a valid and acceptable strategic choice. See, e.g., Lake v. Portuondo, 14 Fed. App'x 126, 128 (2nd Cir. 2001) ("A decision to forgo a charge on lesser included offenses is strategic in nature. Strategic choices made after reasonable investigation will seldom if ever be found wanting, because we are reluctant

---

[18] State Rec., Vol. II of III, transcript of November 13, 2003, pp. 36-37.

to second-guess matters of trial strategy simply because the chosen strategy has failed.") (internal citations and quotation marks omitted); see also United States *ex rel.* Webster v. DeTella, 965 F. Supp. 1124, 1132-33 (N.D. Ill. 1997) ("As for the decision not to offer a jury instruction on a lesser included offense, that is within the realm of trial strategy, an area in which Monday morning quarterbacking is discouraged. ... That [counsel's] strategy misfired is no proof of ineffectiveness; even the best trial attorney may misjudge trial strategy on occasion."). For example, such a strategy may validly be employed if defense counsel feels that he can establish reasonable doubt with respect to the charged offense:

> Submission of lesser included offenses may give the jury a basis for finding a defendant guilty of a crime where the prosecution was unable to prove the elements of the original crime charged beyond a reasonable doubt. Counsel may have appropriately wished to avoid this possibility and this decision therefore did not constitute ineffective assistance of counsel.

Colon v. Smith, 723 F. Supp. 1003, 1008 (S.D.N.Y. 1989). Additionally, counsel's failure to forgo lesser responsive verdicts may result from an equally valid strategic choice to avoid a possible compromise verdict. In light of the foregoing considerations and the particular facts of this case demonstrating petitioner's limited role in the transactions at issue, the Court finds that petitioner has not demonstrated that his counsel performed deficiently by eliminating the other responsive verdicts in an attempt to obtain a hung jury or an outright acquittal.

For all the foregoing reasons, petitioner has failed to demonstrate that the state court's decisions regarding any of his ineffective assistance of counsel claims were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court

of the United States. Accordingly, applying the AEDPA's deferential standard, this Court likewise rejects those claims.

## Judicial Bias

Without further explanation, petitioner states his second claim as "[b]ias by the sitting judge of the 40th JDC, when sentencing the defendant." Petitioner does not identify the nature of the purported bias. Moreover, the trial judge expressly considered the pre-sentence investigation report, including petitioner's extensive history as a career criminal as recounted therein,[19] and sentenced petitioner within the ranges provided by statute.[20] Without more, there is simply no basis for a finding that the trial judge was biased.

## **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Damon Smith be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from

---

[19] A copy of that pre-sentence investigation report is included in Volume I of the state court record.

[20] State Rec., Vol. II of III, transcript of May 18, 2005.

a failure to object. Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

    New Orleans, Louisiana, this twenty-sixth day of October, 2009.

                         **SALLY SHUSHAN**
                         **UNITED STATES MAGISTRATE JUDGE**